IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES GARNER, et al | ) | |
| Plaintiffs; | ) | |
| | ) | |
| V. | ) | 16cv10108 |
| | ) | JUDGE LEE |
| | ) | MAG. JUDGE WEISMAN |
| University of Chicago Medical Center, et al | ) | |
| Defendants. | ) | |

FILED
OCT 27 2016
10-27-16
THOMAS G BRUTON
CLERK U S DISTRICT COURT

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Comes now undersigned Plaintiff, and moving for a temporary restraining order and preliminary injunction against Defendants, to forthwith return the minor, Africa, to the custody and care of Plaintiff father, states as follows:

### Introduction

Plaintiff seeks emergency equitable relief in the form of a preliminary injunction and temporary restraining order directing the Defendants to return custody of what is left of Africa to Plaintiff immediately, with all deliberate speed. Plaintiff now files a Motion for Preliminary Injunction and Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65 (a)(1)-(2); (b)(1)(A)-(B), seeking injunction against Defendants to stop their officials and agents from further perpetrating Constitutional injury against Plaintiffs.

### Factual Background

1.  Plaintiff incorporates by reference all items in his Complaint (Dkt.-_____).

2. O'Keefe, through her UC subordinates, has completely cut-off any visits between Plaintiff and Africa, since Plaintiff was removed from Africa's #457-hospital ICU-room on October 21, 2016 by UC guard "Jose";

3. When Plaintiff Garner sought reasonable explanation for UC's outrageous shocking decision to incarcerate critically ill possibly dying 4-month old from Africa's closet friend and father from visits, UC subordinates, including "Zack", Rudder, Reyes, and others, subjected father to mostly phone "run-around", vexatious delay for days, evasion via such Defendants repeatedly refusing to reveal O'Keefe contact information, and hurtful outright lies, when Reyes and Akerman, both stated that Garner should contact disabled Plaintiff Turner to findout why Garner was arbitrarily suddenly banned from visits with Africa.

4. Reyes also stated that Garner could also call back Saturday October 22, 2016 and Kuntz would render an explanation for Africa's incarceration away from her Dad Garner.

5. On Saturday October 22, 2016, after Plaintiff's UC lobby waiting room closing of a deal to retain two prominent successful firms to seek redress in state forum for Africa's unnecessary circumstances, Garner tried to visit Africa and was told by UC guard "Butler" that Garner was banned, but Turner could visit Africa.

6. Garner repeatedly called UC to speak to Kuntz, Kuntz failed to return any of Garner's calls, and finally, after hours of calling, Akerman called to say that Kuntz told

her she would not talk to Garner and indicated Garner had to live with UC decision to incarcerate Africa from Garner.

7. On October 23, 2016, Garner to UC, Garner asked to visit Africa, UC guard said that Garner could not visit Africa, and Garner left without incident.

8. On October 24, 2016, during 5-minute call, Kuntz called and said Turner could visit Africa, but Garner couldn't and Garner should call DCFS to findout why. Kuntz refused to reveal whether it was UC or DCFS who had ordered this confinement of Africa.

9. On October 24, 2016, Garner to UC, Garner asked to visit Africa, UC guard said that Garner could not visit Africa, and Garner left without incident.

10. On October 25, 2016, Garner to UC, Garner asked to visit Africa, UC guard-#1(*A-A-F*) said that Garner could not visit Africa, told Garner not to keep coming to UC, said Garner was recording the incident, ducked down as if trying to hide from view, asked guard-#2(*A-A-F*) if she should call additional guard named "Reggie", guard-#2 said yes, a call was made, Garner waited for a few minutes, no one arrived, Garner started walking toward the exit, guard-#2 was following Garner, Garner walked outside, guard-#2 came outside looking around, other guards joined guard-#2, as they all looked around like they were looking for Garner, and Garner left UC area.

11. Defendants, through their collective unlawful acts, have put Plaintiff in the outrageously unfair position of being a completely innocent non-lawyer father, repeatedly

framed by DCFS, <u>forced</u> to file both a complex federal civil action and an even more complex emergency TRO motion on short notice, while under extreme UC manufactured duress of not knowing whether Africa is alive or dead, and or just being denied proper treatment in a lawless hostile discriminatory dishonest hateful hospital like UC.

12. Plaintiff has never smoked, used any illegal drugs, drank alcohol, and never been convicted of a felony, absent the DCFS orchestrated 1994 misdeameanor framing via DCFS concealment of evidence concerning Garner's half-sister, Garner could say that he has never been convicted of any crime, during his 55-years on this earth.

13. Plaintiff a rare father, who can say he was around his daughter Africa, an average of about 22-hours per day, except couple of days she was in hospital at birth and her current hospitalization since October 17, 2016.

14. Facts herein, logically indicate that this is how Defendants responds and retaliates against a Plaintiff that merely zealously advocates for his gravely ill daughter Africa and won't make deals with people that would harm innocent children like Africa's 16-year old disabled autistic mentally ill brother James Amistad Moses Garner/James A., and Africa.

15. Due to the strong possibility of further DCFS retaliation for Plaintiff filing July 15, 2016 civil action in federal Court, as happened before concerning mere letters, it is necessary to obtain the relief requested immediately.

## ARGUMENT
### Federal Temporary Restraining Order and Preliminary Injunction Standard

A federal court may grant a preliminary injunction if the moving party can show: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest.

Joelner v. Washington Park, 378 F.3d 613, 619 (7th Cir. 2004).

Fed.R.Civ.P. 65(b)(1) governs temporary restraining orders as follows:

The Court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the Movant before adverse party can be heard in opposition; and
(B) the Movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

16. Plaintiff is likely to succeed on the merits because Plaintiff was deprived of his custody of Africa on October 21, 2016, without due process, and UC workers like Reyes and Kuntz, who all either denied and or evaded saying who ordered incarceration of Africa away from Garner.

17. Moreover, given the facts between October 17, 2016 through October 21, 2016, as better described above, no reasonable person would conclude that Plaintiff Garner did anything even remotely wrong to warrant a sudden incarceration of a father's severely perhaps permanently disabled infant Africa lying almost motionless in a ICU bed, during the last aforementioned UC disrupted visit.

18. Finally, DCFS via Crutch was aware of criminal false UC October 17, 2016 reports against Plaintiff Garner per determination by October 18, 2016 phone investigation, when Crutch stated that UC wanted Africa's parents to return to UC, so that UC could help Plaintiffs create a medical malpractice case against another smaller hospital, yet Crutch not only stated that the case would be unfounded, but DCFS failed to initiate criminal charges against UC for repeatedly making false reports to DCFS, concerning Garner's care of both Africa and James A., who was in the UC ER on or about June 1, 2016 and UC, then tried to frame Garner for abandonment of James A., to cover-up their refusal to provide proper treatment to James A., by making false reports to DCFS, which were also determined to be unfounded.

19. Thus, twice in 2016, in two separate incidents involving two different very sick African-American children, UC had no grounds to try to frame Plaintiff via unlawful false reports/lies to the DCFS hot-line and such widely known circumstances and UC worker's, as state actors under an unconstitutional Illinois law, actions incarcerating Africa away from a great father/Plaintiff and repeatedly framing Garner, is an egregious arbitrary abuse of government power that shocks the conscience. Such violates Plaintiff's rights to substantive due process under the Fourteenth Amendment- as no other constitutional provision provides relief to Plaintiff in this regard.

20. And no adequate remedy at law exists to repair and reverse the damage done to Plaintiff and Africa, Money damages without reuniting Plaintiff with Africa will not remove the great emotional and familial injury done here. Only equitable relief

can do that.

21. And for the same reason, irreparable harm will continue if this injunction is denied.

22. However, Defendants lose nothing if this injunction is granted and Defendants are forced to forthwith return custody of Africa to Plaintiff Garner, return all visitation rights to Garner, refrain from subjecting Garner to any additional discrimination based upon race, gender, and disability, refrain from conspiring to evade possible medical malpractice liability by attempting to coerce Plaintiffs into criminal conspiracy to manufacture medical malpractice case against another hospital, refrain from conspiring to take advantage of Africa's disabled mom Turner by getting her alone to attempt to coerce her into signing UC release of liability documents, and finally, refrain from conspiring to "frame" Plaintiffs for abandonment charges by blocking Garner from visiting Africa, so that they can falsely allege to DCFS that Africa has not had a visit from a parent in a period of time, as a back-up plan to aforementioned schemes, all in furtherance of criminal conspiracy to evade liability regarding unnecessary hospital caused injuries to Africa.

23. For the record, Turner's disability along with UC's immoral, heinous, and or unlawful outrageous shocking conduct, given Africa's grave current circumstances, has made Turner worried about what these Defendants will do to Africa.

24. Moreover, no sane reasonable person would be comfortable coming to UC to visit Africa, at this point, without a Court order and or body guards.

25. Furthermore, it is simply shameful the way lawless greedy people sometimes behave over $; Putting career protection, over an innocent infant's life!

26. And public interest is undoubtedly best served by maintaining family integrity and more importantly, by upholding a trend toward taking action to expose corruption, where ever it may exist.

27. Allowing Defendants to prevail in this case and further bury Plaintiffs, Africa, James A., and his family, under a systematically growing mountain of DCFS lies, dating all the way back to J.L.'s 1991 visit to what was then Cook County Hospital ER, continuing up to July 2, 2016, when James A., was abducted from Holy Cross Hospital, and moving forward, to the October 21, 2016 incarceration of Africa away from her father, while she fights alone for whatever is left of her brief life in a hateful hostile UC, sends a chilling message to poor parents everywhere, should a kid become ill and they ask for a second opinion and or dare disagree with these above the law self-made doctor dictators..................................given almost omnipotent power by certain unconstitutional Illinois laws, if a parent is not rich and able to forthwith bring barristers to file a proper complaint and TRO;

28. That big powerful conspiring entities, like UC and DCFS, can retaliate against them egregiously and with impunity for following the law, standing against

corruption, and advocating to get proper medical treatment for a child;........................is never in the best interest of children or the public.

29. Further, James A. is very possibly experiencing inhumane abuse and or neglect in his current placement, which DCFS is ignoring as part of a cover-up, to either limit liabilty or escape liablity for this outrageous abuse of government power, while his innocent 4-month old infant sister Africa, clings to life alone, without her loving father Plaintiff.

30. If an investigation is warranted, then Plaintiff requests that a Special Master be appointed to investigate Africa's current circumstances and whether Africa has been getting proper medical treatment at the UC.

31. A TRO is necessary because UC attempts to alienate Africa from Plaintiff Garner, are ongoing and continuing, because all communication and visits between Africa and Garner have been stopped by UC since October 21, 2016.

32. Immediate intervention is absolutely necessary to allow Plaintiff Garner to not only have care for Africa returned to Garner and Africa to rebond with her family, and allow Garner to seek proper treatment for Africa, without any future UC or DCFS unwarranted interference and or retaliation;  Which includes the aforementioned specific outrageous orchestrated example, of the October 25, 2016-incident, where UC goon guards were waiting to ambush a polite peaceful parent/Garner, merely trying to visit Africa on a daily basis;  Such UC goons were clearly given green-light to harrass or try to

goad Garner into a confrontation, to "frame", harm, and or paint Garner as a bad person, in furtherance of aforementioned criminal conspiracy.

## Eleventh Amendment Immunity

This suit is not barred by the Eleventh Amendment, with respect to the State Defendants, as exception to this Amendment's immunity for states applies, under Ex parte Young, 209 U.S. 123. 159-60, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which held that a Plaintiff may file "suit against state officials seeking prospective equitable relief for ongoing violations of federal law...." Marie O. v. Edgar, 131 F.d 610, 615 (7th Cir. 1997).

As demonstrated in this Motion, the violations of Plaintiff's federal constitutional rights, including but not limited to substantive due process are ongoing and continuing.

Moreover, it is only fair and just for Plaintiff to get a measure of relief from oppressive crushing hour by hour worry about Africa being denied proper medical treatment, as a mere "pawn" being used by UC to cover-up this atrocious vile ludicras desparate ongoing scheme to frame and falsely paint Plaintiff Garner as an unfit father, because Garner both refused to sign UC release + right to use Africa's body parts for teaching UC students and Garner refused to join afforementioned criminal conspiracy.

Furthermore, such conspiracy, a blatant attempt by Defendants to avoid liabilty, for their outrageous black-hearted actions toward a gravely ill infant fighting for her life.

Conclusion

Wherefore, Plaintiffs urges this Court to grant a Temporary Restraining Order and or Preliminary Injunction, **returning** Africa immediately to Garner's care and custody, allowing now, very disrupted overwhelmed Garner to also regain focus on other separate pre-existing urgent legal matters(*including efforts to get custody of James A., returned and then, get James A. proper medical treatment in a special 15-bed Streamwood mental hospital unit for developmentally delayed and or autistic kids*), **restraining** DCFS Defendants from taking any further action toward Africa without this Court's prior approval while this civil action is pending, **allowing** Plaintiff a fair opportunity to have time to seek a lawyer to properly amend complaint to address a myriad number of claims created by Defendants, except any medical claims(*which are being investigated by professionals regarding only Africa*), plus moving forward, handle this civil action, filed solely, due to Africa being in UC, since October 17, 2016 and Defendant actions arising from Africa's UC hospitalization and for no other reason, and if the Court deems it necessary, **appoint** a Special Master to investigate Defendant's handling of Africa, **appoint** lawyers to represent Plaintffs in this complex legal matter created solely by Defendants aforementioned criminal conspiracy, and any other action deemed necessary by this Honorable Court.

James Garner
Plaintiff
P.O. Box 368371
Chicago, Illinois 60636
Ph: (224) 650-4677
Email: BusinessConsult1@yahoo.com

## AFFIDAVIT

BE IT ACKNOWLEDGED, that James Garner

of the undersign

deponent, being of legal age, does hereby depose and say under oath as follows:

Content of attached TRO motion is true.

And I affirm that the foregoing is true except as to statements made upon information and belief, and as to those I believe them to be true.

Witness my hand under the penalties of perjury this day of October 27, 2016.

Signature of Deponent

*[signature]*