LCW

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

RECEIVED

NOV 15 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

James Garner, et al _____ )
_____ )
)
)
**Plaintiff(s),** )
)
**vs.** )
)
UNIVERSITY OF CHICAGO MEDICAL )
CTR., ET AL., _____ , )
)
**Defendant(s).** )
)

16cv10108
JUDGE LEE
MAG. JUDGE WEISMAN

Redacted

## COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

*This form complaint is designed to help you, as a pro se plaintiff, state your case in a clear manner. Please read the directions and the numbered paragraphs carefully. Some paragraphs may not apply to you. You may cross out paragraphs that do not apply to you. All references to "plaintiff" and "defendant" are stated in the singular but will apply to more than one plaintiff or defendant if that is the nature of the case.*

1.  This is a claim for violation of plaintiff's civil rights as protected by the Constitution and

    laws of the United States under 42 U.S.C. §§ 1983, 1985, and 1986.

2.  The court has jurisdiction under 28 U.S.C. §§ 1343 and 1367.

3.  Plaintiff's full name is _James Henry Garner_____ .

*If there are additional plaintiffs, fill in the above information as to the first-named plaintiff and complete the information for each additional plaintiff on an extra sheet* (SEE "#1 Attachment: LIST OF PLAINTIFFS")

1

4.  Defendant, ___Patricia Crutch_____, is
                              (name, badge number if known)

    ☒ an officer or official employed by ___DCFS_____;
                                          (department or agency of government)

    ___Jason Kane_____ or

    ☒ an individual not employed by a governmental entity.

*If there are additional defendants, fill in the above information as to the first-named defendant and complete the information for each additional defendant on an extra sheet.*

5.  The municipality, township or county under whose authority defendant officer or official

    acted is_____. As to plaintiff's federal

    constitutional claims, the municipality, township or county is a defendant only if

    custom or policy allegations are made at paragraph 7 below.

6.  On or about ___October 17, 2016_ at approximately ___afternoon_____ ☐ a.m. ☒ p.m.
                  (month,day, year)

    plaintiff was present in the municipality (or unincorporated area) of ___Chicago_____

    _____, in the County of ___Cook_____,

    State of Illinois, at ___5841 S. Maryland Ave., Chicago, Ill. 60637_,
                            (identify location as precisely as possible)

    when defendant violated plaintiff's civil rights as follows *(Place X in each box that applies)*:

    ☒   arrested or seized plaintiff without probable cause to believe that plaintiff had
        committed, was committing or was about to commit a crime;
    ☐   searched plaintiff or his property without a warrant and without reasonable cause;
    ☐   used excessive force upon plaintiff;
    ☒   failed to intervene to protect plaintiff from violation of plaintiff's civil rights by
        one or more other defendants;
    ☐   failed to provide plaintiff with needed medical care;
    ☒   conspired together to violate one or more of plaintiff's civil rights;
    ☐   Other:
        ___racketeering, fraud, and other crimes._____

    _____

_____.

7.   Defendant officer or official acted pursuant to a custom or policy of defendant

municipality, county or township, which custom or policy is the following: (***Leave blank***

***if no custom or policy is alleged***):_____

_____

_____

_____.

8.   Plaintiff was charged with one or more crimes, specifically:

_____

_____

_____

_____

_____

9.   **(*Place an X in the box that applies. If none applies, you may describe the criminal**
**proceedings under "Other"*) The criminal proceedings**

☐  are still pending.

☐  were terminated in favor of plaintiff in a manner indicating plaintiff was innocent.[1]

☐  Plaintiff was found guilty of one or more charges because defendant deprived me of a

fair trial as follows_____

_____.

☐  Other: _____.

_____

[1]Examples of termination in favor of the plaintiff in a manner indicating plaintiff was innocent
may include a judgment of not guilty, reversal of a conviction on direct appeal, expungement of the
conviction, a voluntary dismissal (SOL) by the prosecutor, or a *nolle prosequi* order.

3

10.   Plaintiff further alleges as follows: (*Describe what happened that you believe supports your claims. To the extent possible, be specific as to your own actions and the actions of each defendant.*)

(SEE "#3 Attachment:   PLAINTIFF FURTHER ALLEGES")

11.   Defendant acted knowingly, intentionally, willfully and maliciously.

12.   As a result of defendant's conduct, plaintiff was injured as follows:

Severe emotional distress, great expense or cost, and other damages.

13.   Plaintiff asks that the case be tried by a jury.   ☒ Yes      ☐ No

4

14.     Plaintiff also claims violation of rights that may be protected by the laws of Illinois, such

as false arrest, assault, battery, false imprisonment, malicious prosecution, conspiracy,

and/or any other claim that may be supported by the allegations of this complaint.


**WHEREFORE,** plaintiff asks for the following relief:

A.      Damages to compensate for all bodily harm, emotional harm, pain and suffering,

loss of income, loss of enjoyment of life, property damage and any other injuries

inflicted by defendant;

B.      ☒ *(Place X in box if you are seeking punitive damages.)* Punitive damages

against the individual defendant; and

C.      Such injunctive, declaratory, or other relief as may be appropriate, including

attorney's fees and reasonable expenses as authorized by 42 U.S.C. § 1988.

Plaintiff's signature: _____  .  _Tina Turner_

Plaintiff's name *(print clearly or type)*: James Garner;              ;Tina Turner

Plaintiff's mailing address: P.O. BOX 568571

City   Chicago               State Illinois   ZIP  60636

Plaintiff's telephone number: ( 224)  650-4677              .

Plaintiff's email address *(if you prefer to be contacted by email)*: _____

_____

15.     Plaintiff has previously filed a case in this district.  ☒ Yes  ☐ No

*If yes, please list the cases below.*

14cv09980

*Any additional plaintiffs must sign the complaint and provide the same information as the first
plaintiff.  An additional signature page may be added.*

5

**"#1 Attachment:   LIST OF PLAINTIFFS"**

Tina Turner

**"#2 Attachment:   LIST OF DEFENDANTS"**

UNIVERSITY OF CHICAGO MEDICAL CENTER (*UC*)
Sarah O'Keefe
Jason Kane
Judy Holleman
Lisa Kuntz
Wendell Reyes
Consuello Rudder
"Zack"
Stephanie
Unknown UC worker-#1
Unknown UC worker-#2


DEPARTMENT OF CHILDREN AND FAMILY SERVICES (*DCFS*)
George Sheldon
Lisa Carswell
Patricia Crutch
Mike Deschamps
Stevie L. Lemon

## "#3 Attachment:   PLAINTIFF FURTHER ALLEGES"

### INTRODUCTION

1.      This is a civil action seeking damages against Defendants for (1)

conducting affairs of various enterprises, including the UNIVERSITY OF CHICAGO

MEDICAL CENTER("UC"), University of Chicago Comer Children's Hospital, and

GEORGE SHELDON, Director of Illinois Department of Children and Family

Services("DCFS"), through a pattern of racketeering activity against the Plaintiffs; (2)

against Defendants Sarah O'Keefe, UC, and SHELDON, for maintaining widespread

policies and practices in furtherance of the racketeering; (3) for depriving plaintiffs of

rights guaranteed.by the U.S. Constitution; and (4) for related State law claims.

### JURISDICTION

2.      This action is brought pursuant to 18 U.S.C. §§ *I96\,et. seq.*, the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), and pursuant to 42 U.S.C. §§ 1983,

1985, and the Fourth, Eighth, and Fourteenth Amendments to the United States

Constitution. The jurisdiction of this Court is also invoked pursuant to the Civil Rights

Act, 42 U.S.C., § 1983, and § 1985; the Judicial code 28 U.S.C., § 1331 and 1343 (a); the

Constitution of the United States;  and pendent jurisdiction as provided under U.S.C., §

1367(a). Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to

28 U.S.C. § 1367 to hear and decide claims arising out of state law.

### PARTIES

3.      Plaintiff James Garner, hereinafter "Garner" and or "Plaintiff",   is a U.S.

citizen who currently resides in Chicago, **Illinois.**

Page  1  of  8

4.      Plaintiff Tina Turner, hereinafter "Turner", is a U.S. citizen who currently resides in Chicago, **Illinois.**

5.      Defendant University of Chicago Medical Center, hereinafter "UC", is an Illinois non-corporation, number 54397577, in good-standing, and is, upon information and belief, is operated by Defendant UC President Sarah O'Keefe, at 5841 S. Maryland Ave., Chicago, IL, 60637.

6.      Upon information and belief, UC Defendant workers include Jason Kane, Judy Holleman, Lisa Kuntz, Wendell Reyes, Consuello Rudder, "Zack", "Stephanie", Unknown UC worker-#1, and Unknown UC worker-#2, were, at the time of this occurrence, UC workers, with Kane, Holleman, and Stephanie, being duly licensed Illinois health care workers. They engaged in the conduct complained of while on duty in the course and scope of their employment and upon information and belief, Kane, Holleman, and Kuntz, also acted as state actors, under color of law. They are sued in their individual capacities.

7.      Upon information and belief, Illinois Department of Children and Family Services, hereinafter "DCFS", Defendant workers include Lisa Carswell, Patricia Crutch, Mike Deschamps, Stevie L. Lemon, and Anthony Ollins were, at the time of this occurrence, engaged in the conduct complained of while on duty in the course and scope of their employment and under color of law. They are sued in their individual capacities.

8.      George Sheldon is the Director that heads DCFS, and has been during all

"medical advancement".

17.     After Garner failed to sign Exhibit A and left UC, Garner talked via phone to UC workers.

18.     Around 9 a.m., Defendant Kane described Exhibit A as "consent" and during roughly 11-minute call, Kane indicated he would become a state actor to take custody of Africa and do whatever surgery that he wanted to do, if one of Africa's parents didn't return to UC and sign Exhibit A.

19.     Garner asked Kane could Africa be treated with antibiotics rather than surgeries, and Kane said that was a good question, but evaded rendering an answer.

20.     Kane repeatedly made demands, continued to evade Garner's questions, and continued to pressure Garner to come-in to sign Exhibit A.

21.     Around 9:30 a.m., UC Defendant Holleman called and tried to pressure Garner into signing Exhibit A.

22.     Garner asked Holleman, if Garner can get a second opinion, and Holleman indicated UC would not allow Garner to get a second opinion, then Holleman became rude, by ignoring Garner's questions.

23.     Holleman admitted Africa could be treated with multiple antibotics.

24.     Defendant UC workers proceeded to perform unauthorized treatment,

including surgery on Africa;

25.     Garner called for legal advice, since UC workers would not allow Garner to speak with people in charge of UC, like Defendant O'Keefe.

26.     Around 11:57 a.m., Garner left a message for Kane.

27.     Around, 12:08 a.m., UC worker Kelly indicated UC executed first surgery on Africa, putting a needle in Africa's brain and went to get Kane.

28.     Rude dictatorial discriminatory, racial, gender, and disibility, nature of UC worker communication toward Garner;   As a direct and proximate result of the illegal discrimination and coercion tactics performed by the Defendants throughout Africa's health crisis ordeal, caused extreme emotional distress damage to Plaintiffs.

**Conspiratorial Activities**

29.     Around 12:15 a.m., Kane said surgery done via emergency custody and indicated unknown UC worker committed crime of making illegal false reports to DCFS about Plaintiffs.

30.     On October 18, 2016, around 10:30 a.m., DCFS Defendant Crutch called Garner and indicated UC made false allegations concerning (1) medical neglect and (2) risk of harm by neglect;

31.     Crutch indicated medical neglect charge was because Plaintiffs failed sign Exhibit A.

32.     Crutch indicated risk of harm by neglect charge was because Plaintiffs failed to timely sign Exhibit A.

33.     Crutch indicated UC had unlawfully seized custody of Africa.

34.     Crutch said "based upon the information gathered, you all have been doing what you need to do, to ensure that your babies medical needs are being met";

35.     Despite admitting(*within the first 7-minutes of a 53-minute call*) that her investigation had already determined a UC worker had commited a crime by making false report to DCFS hot-line that created DCFS investigation case/scr# 2269108-A, Crutch nevertheless continued such unfounded investigation to aid and abet criminal conspiracy;

36.     Thus, upon information and belief, Crutch violated Illinois laws concerning unfounded allegations and investigations;

37.     Garner explained Exhibit A to Crutch, why Garner failed to execute such document, told Crutch he didn't do anything wrong, and that Garner was up all night helping Africa get treatment, as was Turner.

38.     Crutch said UC worker made false allegation that Garner refused to allow UC to contact Turner.

39.     Garner told Crutch that Illinois laws allow Doctors to retaliate against any parent that won't kowtow to them.

Page  6  of  8

40.    Crutch asked when she could meet with Garner;  Garner invited Crutch to meet with him at a lawyers office at 3 p.m. today;  Crutch declined.

41.    Crutch said this case is not serious, you(Garner) have the right to consent or not to consent, and you(Garner) have the right to a second opinion;

42.    Crutch said UC is getting documentation together for you(Garner) or the baby mother to have a lawsuit.

43.    Crutch said baby had medical issues at birth and no one at that hospital addressed these issues;

44.    Crutch said UC was trying to gather records to help Garner;

45.    Crutch said UC is not trying to hinder you(Garner), but they're(UC) trying to build up all the medical stuff you need regarding your child for you and the mother to seek medical malpractice;

46.    Crutch asked Garner, "Do you understand what I'm saying sir?"

47.    Garner replied, "Well Ms. Crutch thats a revelation, I'm glad we had this conversation?"

48.    [NOTE:  DUE TO FACT THAT AFRICA IS IN CRITICAL CONDITION AND THERE IS NO TIME TO COMPLETE THIS INCOMPLETE COMPLAINT, AS PLAINTIFFS TRY TO FILE THIS CASE + TRO, WHILE THERE IS NO STATE CASE PENDING REGARDING AFRICA;  THEREFORE, IF THIS HONORABLE COURT WILL ALLOW PLAINTIFFS TIME TO FILE AN AMENDED COMPLAINT TO COMPLETELY SET-FORTH ADDITIONAL ALLEGATIONS CONCERNING

AFOREMENTIONED CRIMINAL CONSPIRACY AND ALL THE OTHER CLAIMS
AGAINST DEFENDANTS, HOPEFULLY WITH THE AID OF A LAWYER.]

49.     Exhibit B, October 18, 2016-document from federal agency, renders proof

Africa waas in Garner's care.

50.     Exhibit C, October 18, 2016-document from lawyer meeting Crutch

declined to attend, renders proof that Garner has taken steps to ensure that Africa's

medical needs are taken care of for life, which is in the best interest of Africa;   Thus,

Garner had no reason or desire to join the shameful UC/Crutch criminal conspiracy to

escape liability.


51.     Exhibit D, July 3, 2016 and October 19, 2016 pictures plus entire

document, indicates that Garner has extensive experience with Defendants and many

more allegations to make against Defendants, if this Honorable Court will allow justice

for heinous crime against 11-innocent children destroyed by corruption, racketeering and

$.

FORM 18.01A R6/14



18.01A

**THE UNIVERSITY OF CHICAGO MEDICINE**
**CONSENT TO MEDICAL/**
**SURGICAL PROCEDURES**

Patient Name: _____

MRN:_____

CSN: _____

*AFFIX PATIENT IDENTIFICATION LABEL HERE*

I consent to UCMC sharing my patient information with my other non-UCMC health care providers through electronic portals and exchange, for the purpose of coordinating medical care. I understand that this would enable my non-UCMC providers to access certain information in my medical record at UCMC, including – if applicable – information relating to mental health, HIV/AIDs, genetic testing, Communicable Diseases (STDs), invitro fertilization, abuse, domestic violence, and drug and alcohol treatment information. I know that this process is voluntary and that I may "Opt Out" at any time by requesting an "Opt-Out" form.

**CONSENT FOR BLOOD TRANSFUSION:** I have been told that I may need a transfusion of blood or blood products and have been told what the benefits to me might be. If appropriate, I have received information about transfusion alternatives, including autologous and directed donations.

I have been told how a blood transfusion is given and the possible risks and consequences of the transfusion, including bruising, an allergic reaction, fever and hives, and being exposed through transfusion to infectious disease such as hepatitis and HIV. The estimated risk of getting HIV from a transfusion is approximately 1 in 2 million per unit of blood transfused. The estimated risk of getting hepatitis is approximately 1 in 1.6 million for Hepatitis C virus and 1 in 150,000 for Hepatitis B virus per unit of blood transfused.

I understand that every possible precaution is taken by the Blood Bank in choosing donors and in matching blood for transfusion. I have had a chance to ask my physician and/or nurse other questions about the transfusion process and its risks and consequences and they have answered them. I understand this consent for blood products is valid for my entire hospitalization or until I withdraw my consent for blood transfusions.

_____X_____ (Patient Initial) I consent to the use of blood and blood products

_____ (Patient Initial) I **DO NOT** consent to the use of blood and blood products

I acknowledge that my physician and his/her healthcare team have provided me with the information described above regarding my surgery/procedure. I have had an opportunity to discuss the procedure and anesthesia with the physician(s) involved, I have been given an opportunity to ask questions and my questions have been answered.

I acknowledge that I have reviewed and fully understand the entire contents of this form.

**Patient/Representative Signature:** _____

**Patient/Representative Printed Name:** _____

**Date:** _10/19/16_     **Time:** _____

As the Physician or LIP obtaining this consent, I have explained the anticipated benefits, relevant risks and alternatives with this patient and/or representative.

**Physician Signature:** _____    **Credentials:** _M.D._

**Physician Printed Name:** _____    **Pager #:** _4126_

**Date Signed:** _10/17/16_     **Time:** _____

Any decision as to settlement of the case is mine alone and no settlement shall be made without my consent. Should the attorney recommend acceptance of an offer of settlement and I refuse to accept such offer, then ATTORNEY has the right to require that they be reimbursed at that time for all outstanding case expense and advance any further funds needed for trial or to withdraw from further representation in this matter. Withdrawal shall not occur until reasonable steps to avoid foreseeable prejudice to the CLIENT have been taken. Should I elect to terminate the services of ATTORNEYS, I agree their compensation shall be one-third of any then existing offers or payment of the applicable hourly rate, whichever is greater. I am to also reimburse all monies for case expenses prior to the firm's release of my file.

CLIENT further agrees that all attorneys' fees and costs may be deducted from any settlement proceeds are of a periodic nature or are to be received in the future, the aforesaid legal fees may also be taken in the future at the election of ATTORNEY.


## APPEAL, PROBATE, COVERAGE LITIGATION OR SECOND TRIAL AND FEES.

If an appeal, probate work or insurance coverage litigation is necessary, in addition to the aforesaid fee, ATTORNEY will be paid either their customary hourly fees for the handling of the appeal, probate work or coverage litigation or the charges of outside counsel, if I choose to utilize the same. I understand that ATTORNEY is not obligated to represent me in an appeal, probate or coverage litigation.

## CLIENT COOPERATION
The CLIENT agrees to cooperate fully with the ATTORNEY in the handling of the payment of costs and expenses, review, investigation and representation of the claim, cause of action or litigation.

CLIENT fully understands, agrees and consents to the fact that _MARTIN N PREISER_, the referring attorney in this matter, will receive attorney's fees as follows:

On a percentage basis of _⅓ (ONE THIRD) OR MORE OF THE GROSS ATTORNEY FEE_.


Notwithstanding any provision in the Contract to the contrary, ATTORNEY shall be entitled to receive, and shall be considered to have earned, attorneys' fees, as set forth in the Contract, solely and exclusively if Barry D. Goldberg shall be then living on the date of Final Disposition of the claim or cause of action described in the Contract. In addition, ATTORNEY shall be entitled to receive costs and expenses advanced on behalf of CLIENT, as set forth in the Contract, solely and exclusively if Barry D. Goldberg shall be then living on the date of Final Disposition of the claim or cause of action described in the Contract. Further, ATTORNEY does herein waive any and all rights to recover attorneys' fees in the nature of in quantum meruit and any costs and expenses advanced if Barry D. Goldberg dies before the date of Final Disposition of such claim or cause of action.



Chicago Medical Malpractice Lawyer - Illinois Personal Injury Attorney - Cook County Accident Lawyer - Mozilla Firefox

File Edit View History Bookmarks Tools Help

Chicago Medical Malpractice L... ×

www.chicagomedicalmalpracticefirm.com

Search

**G&G**
Goldberg & Goldberg

Home | Firm Overview | Attorney Profiles | Practice Areas | Verdicts & Settlements | In The Media | Do I Have A Case? | Blog | Contact Us

FREE CONSULTATION
312-368-0255

VERDICTS & SETTLEMENTS
$127,700,000

## The Largest Personal Injury Verdict in Illinois History: $127,000,000

### Exceptional Success in Chicago Medical Malpractice and Personal Injury Cases

For over 40 years, Goldberg & Goldberg has successfully represented victims of medical malpractice and other types of negligence in Chicago, throughout Illinois, and across the U.S. With members licensed to practice law in Illinois, New York, Florida, Colorado, and California, the firm has tried or settled cases in 23 states.

The Chicago medical malpractice lawyers at Goldberg & Goldberg focus on specialized injury cases such as

### Contact Us

Free Consultation
**312-368-0255**

Name (Required)

Email (Required)

Phone (Required)

www.chicagomedicalmalpracticefirm.com/do-have-a-case.html

6:19 PM
10/18/2016

(4.)

times relevant to this complaint.  At all times material to this complaint, Sheldon acted in

the course and within the scope of his employment, Sheldon is sued in his official

capacity.

### FACTS RELATED TO INITIAL UC COERCION

9.      On October 17, 2016, at about 12:22 a.m., Plaintiffs took 4-month old

Africa M███████████████, hereinafter "Africa", to ER of hospital she was born.

10.      Around 2:30 a.m., four  unknown UC workers arrived via ambulance,

demanded records, and took Africa to UC intensive care unit(ICU) room 457.

11.      Around 5:10 a.m., UC worker Sanchez told Plaintiffs that Africa needed

brain surgery.

12.      Around 8:30 a.m., UC Defendant Holleman was in room 457, when

Exhibit A, was given to Garner and he was asked to sign to give consent for Africa's

surgery.

13.      Exhibit A, was a consent for surgery;

14.      Exhibit A, also contained legal language to help Defendant UC evade

liability;

15.      Exhibit A, allowed UC to violate Plaintiffs religion about donated blood;

16.      Exhibit A, allowed UC to use Africa as a lab rat to teach UC students and

thus, also allowed UC to "study" any of Africa's "removed tissue" and "body parts" for

FORM 18.01A R6/14

**18.01A**

THE UNIVERSITY OF CHICAGO MEDICINE
**CONSENT TO MEDIC**
**SURGICAL PROCEDU**

Garner, Africa - 3570779
3570779
Birth Date
6/4/2016
8174
PICU

CSN. _____

*AFFIX PATIENT IDENTIFICATION LABEL HERE*

A
1 OF 2

I authorize _____Dr. Woruke_____ and whomever he/she may designate as necessary to
(name of attending physician)

perform upon _____Obica_____ the following procedure(s): _ventricular_
(printed name of patient)

_tap_

(name of procedure and description in lay language)

_____

If any unforeseen condition arises in the course of the procedure calling in the physician's judgment for procedures in addition to or different from those now planned, I further request and authorize the physician to do whatever the physician deems medically advisable.

I consent to the administration of moderate sedation, deep sedation or general anesthesia and to the use of such medications as my physicians may deem advisable. The type and purpose of the sedatives, pain medications, and/or anesthetics, possible alternative methods of sedation or anesthesia, and the possibility of complications have been fully explained to me.

I received information about my condition and the purpose of my treatment. I received information and discussed with my healthcare team the specific procedures to be performed, including the anticipated benefits and the material risks and possible side effects of the procedures. Some of the risks my physician discussed with me include:

_infection, bleeding, CSF leak_

*Additional risks and complications may occur. I understand that this document is not intended to include a list of all known risks and complications associated with the procedure.*

I received information and discussed with my healthcare team the possible alternative methods of treatment, the risks related to not receiving the proposed treatment, and the likelihood that the proposed treatment will be successful. No guarantee or assurance has been made to me that this procedure will improve my condition. I also received information and discussed with my healthcare team the expected post procedural course and discomforts of the procedure.

I understand that because UCMC is a teaching institution, other physicians, including fellows and residents, in addition to APNs, PAs and medical students acting under the supervision and direction of my primary physician may perform important tasks related to the procedure. I also understand that qualified medical practitioners who are not physicians may perform important parts of the procedure or the administration of anesthesia that are within their scope of practice and for which they have been granted privileges by UCMC.

I authorize films, videos, photographs or other images or recordings of this procedure to be taken for medical, scientific, or educational purposes provided the pictures do not reveal my identity, and I am not identified by name.

I consent to the study and disposal by UCMC of any tissues or body parts that may be removed. For the purpose of advancing medical education, I also consent to and authorize appropriate observers, including students in the health care professions, to be present in the procedure room.

EXHIBIT

**B**



SOCIAL SECURITY ADMINISTRATION

OFFICIAL BUSINESS

AFRICA M
IN CARE OF:
JAMES GARNER
P O BOX 368371
CHICAGO IL 60636

SOCIAL SECURITY ADMINISTRATION
2458 S. SACRAMENTO AVE.
CHICAGO, IL 60652



1.21.13

# MALPRACTICE CONTINGENCY FEE CONTRACT

## RETAINER, REVIEW AND INVESTIGATION

The undersigned (CLIENT) hereby retains GOLDBERG & GOLDBERG (ATTORNEY), 33 North Dearborn Street, Suite 1930, Chicago, Illinois 60602, (312) 368-0255, to review and to investigate a claim or cause of action for medical malpractice against those persons or institutions responsible for injuries and damages sustained by AFRICA M~~____~~ ~~AND TINA TURNER~~ JAMES GARNER on or about OCT 8 _____, 2016____. The ATTORNEY agrees to undertake a review and an investigation of this claim or cause of action to determine if the ATTORNEY wishes to proceed with representation of the medical malpractice claim or cause of action.

## TERMINATION AND WITHDRAWAL

The ATTORNEY reserves the right to terminate representation and withdraw from the review and investigation if the ATTORNEY determines that based on the facts, law, or lack of cooperation from the CLIENT, he/she is unable to continue such representation, review or investigation.

## REPRESENTATION AND FEES

Should the ATTORNEY agree to proceed to represent the CLIENT regarding the medical malpractice claim or cause of action, the CLIENT agrees to attorneys' fees as follows:

      33.33% (1/3) of any recovery by settlement or verdict.

## COSTS AND EXPENSES

In addition to the above attorneys' fees, ATTORNEY shall be reimbursed all court costs, reports, witness statements, travel costs (at the usual and customary class of service normally utilized by the particular attorney), computerized legal research costs, photocopying and all other out-of-pocket expenses directly incurred in investigating or litigating this claim. Costs shall be deducted after the Contingency Fee is calculated from the CLIENT's settlement proceeds. These costs shall be paid by the undersigned regardless of the outcome of the claim. All expenses and attorneys' fees may be deducted directly from the proceeds of any recovery prior to distribution to me of my net proceeds at the election of ATTORNEY. In the event of a partial settlement, the entirety of the CLIENT's cost balance will be satisfied from said partial settlement. ATTORNEY specifically reserves the right to associate outside counsel in areas such as appeals, probate or insurance coverage at the express direction of CLIENT with the understanding that said attorney's fees may be charged to CLIENT's costs and will be repaid to ATTORNEY as described above. Said costs related to outside legal work will not result in a reduction of attorney's fees and remains separate and apart from the 33.33% (1/3) contingency fee.



For purposes of this instrument, the date of "Final Disposition" of a claim or cause of action shall mean: (a) the date a final, non-appealable judgment is entered disposing of the claim or cause of action which is the subject matter of the Contract; or (b) the date a written agreement is executed providing for final settlement of the claim or cause of action which is the subject matter of the Contract.

This instrument shall be binding upon and shall inure to the benefit of the parties hereto and their heirs, estates, and personal representatives.

## WITHDRAWAL AFTER REPRESENTATION

The ATTORNEY reserves the right to withdraw from representation of the CLIENT at any time should the CLIENT not cooperate or if, in the opinion of the ATTORNEY, the medical malpractice claim or cause of action become doubtful.

## CONSENT TO REFERRAL

The undersigned CLIENT hereby consents and acknowledges that ATTORNEY will participate jointly with _____ N/A _____ in my representation and both are equally responsible for my representation. There will be no additional fee charged me other than that set forth above, however, there will be a division of that fee between ATTORNEY and the aforesaid attorney for professional services.

DATE: Oct 18, 2016

CLIENT JAMES H. GARNER, INDIVIDUALLY AND AS PARENT OF AFRICA M ████████

CLIENT TINA TURNER, INDIVIDUALLY AND AS PARENT OF AFRICA M ████████

GOLDBERG & GOLDBERG

By: Martin V Preiser

COPY OF AGREEMENT RECEIVED BY CLIENT:

CLIENT

CLIENT

DATE RECEIVED: Oct 18, 2016

3



DCFS
2 OF 11-CHILD
VICTIMS SINCE 1991

EXHIBIT
G

VISIT ← FREE 8-GARNER KIDS KIDNAPPED. GO SIMPINE →

4 MONTHS OLD
AFRICA [ M  OCT. 19, 2016
        [ AFTER
          UNAUTHORIZED
          TREATMENT
          AT UNIVERSITY
          OF CHICAGO
          MEDICAL CTR.
16YR-OLD-JAMES A

AROUND JULY 3, 2016    CHICAGO, ILLINOIS, USA